IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREAT DIVIDE INSURANCE COMPANY, | ) CIVIL NO. 05-00608 JMS/LEK )  ) |
| Plaintiff, | ) ) ORDER DENYING PLAINTIFF |
| vs. | ) GREAT DIVIDE INSURANCE ) COMPANY'S MOTION FOR |
| AOAO MALUNA KAI ESTATES, | ) SUMMARY JUDGMENT ) |
| Defendant. _____ | ) ) |

ORDER DENYING PLAINTIFF GREAT DIVIDE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT

I. INTRODUCTION

Plaintiff Great Divide Insurance Company ("Great Divide") has moved the court for summary judgment as to its claims against Defendant Association of Apartment Owners of Maluna Kai Estates ("Maluna Kai"). Great Divide seeks a declaration that: (1) Great Divide owes no duty to defend or indemnify Maluna Kai, because a coverage exclusion bars Maluna Kai's claim; and (2) Great Divide is entitled to rescind the policy based on misrepresentations made in Maluna Kai's application for insurance. A hearing on the motion was held

on August 30, 2006.  The parties submitted supplemental briefing on September 7, 2006.  Based on the following, the court DENIES Great Divide's motion.

## II.  BACKGROUND

Maluna Kai is an unincorporated homeowners' association whose commonly owned premises were insured by a commercial general liability ("CGL") policy issued by Great Divide.  The insured premises included a swimming pool and cabana area, which are surrounded by a fence with two gates: one on the ocean side and another near the cabana.[1]  In July 2005, a two-year-old child drowned in the Maluna Kai pool.  Maluna Kai notified Great Divide of the drowning and Great Divide now seeks a declaration that it owes no duty to defend or indemnify Maluna Kai and that it is entitled to rescind the policy.

A.   Maluna Kai's Earlier Dealings With Scottsdale and Triad

Great Divide issued annual CGL policies to Maluna Kai in November 2002, November 2003, and November 2004.  Previously, Maluna Kai had been insured by a CGL policy issued by Scottsdale Insurance Company ("Scottsdale"); the most recent policy had effective dates of May 1, 2002 through May 1, 2003.

Triad Insurance Agency ("Triad") acted as Scottsdale's agent in Hawaii.  Triad requested an insurance inspection be done on Maluna Kai, and on

---

[1] The parties' memoranda and supporting documents focus primarily on the condition of the ocean side gate.

May 18, 2001, Gary Yoshinaga of Insurance Inspections in Hawaii, Inc., inspected the Maluna Kai premises. Yoshinaga's report to Triad listed the following two recommendations:

> 01.1  We observed no lock on gate to pool area, and no hooks or life rings on walls with no "no life guard on duty" sign.
>
> Insured should look into hooks and life rings on walls of pool, have a "no life guard on duty" sign posted at entrance and have a lock installed at gate, with keys to homeowners to prevent any accidental problems from occurring at pool area.
>
> 01.2  We observed no fire extinguisher in cabana.
>
> Insured should look into having a UL listed 2A10BC unit mounted in an accessible location, checked on an annual basis, with a current service dated tag attached to unit.

Deposition of Gary Yoshinaga, Ex. 2, Great Divide's Book of Exhibits ("BOE"). One year later, Triad ordered another inspection of Maluna Kai, which Yoshinaga conducted on May 23, 2002. Yoshinaga was not able to enter the premises during this inspection because no caretakers were present to admit him. Maluna Kai's insurance agent, Bankoh Insurance, instructed Yoshinaga to resubmit the same recommendations listed in the previous May 18, 2001 inspection report. Yoshinaga submitted the following recommendations:

> 02.1 We observed no lock on gate to pool area, and no hooks or life rings on walls and no "no life guard on duty" sign.
>
> Board members should look into hook and life rings for pool, placed on walls or fence of pool areas, have a "no life guard on duty" sign posted at entrance to pool, and have a lock installed at gate, with keys to homeowners to prevent any accidental problems from occurring at pools areas.
>
> 02.2 We observed no fire extinguisher in cabana.
>
> Board members should contact a private fire protection agency hand [sic] have a UL listed 2A10BC unit mounted in an accessible location, checked on an annual basis, with a current service dated tag attached to unit.

Deposition of Gary Yoshinaga, Ex. 3, Great Divide's BOE. On June 11, 2002, Triad notified Bankoh Insurance, Maluna Kai's insurance agent, that the inspection recommendations were to be fully implemented no later than June 26, 2002. Bankoh Insurance then told Maluna Kai that the Scottsdale policy would be cancelled on August 15, 2002 if the inspection recommendations were not met. In fact, on August 17, 2002, Scottsdale cancelled Maluna Kai's policy, "due to non-compliance to inspection [recommendations]." Blair Declaration, Ex. F, Great Divide's BOE. Triad sent Maluna Kai this notice of cancellation.

B.  <u>Maluna Kai's Applications to Great Divide</u>

4

In November 2002, Maluna Kai hired David Gerlach of Insurance Associates to serve as its insurance agent.  Maluna Kai's association president, Don Esses, told Gerlach that the Scottsdale policy had been "cancelled due to the lack of the loss control recommendations being fixed."  Esses Deposition, 84:20-21, Great Divide's BOE.

On November 25, 2002, Gerlach, on behalf of Maluna Kai, submitted a commercial insurance application to Triad for Great Divide Insurance.  The application asked:  "Any policy or coverage declined, cancelled or non-renewed during the prior 3 years?"; Gerlach marked an "X" in the "No" column.  In the "Loss History" section, Gerlach noted in the "Remarks" field:  "Insurance lapsed and prior agent did not want to work on account as it was too small for them."  Blair Declaration, Ex. G, Great Divide's BOE.

Gerlach testified that this had been a mistake in the application.  He claims that the box should have been checked "yes" because he knew the Scottsdale policy had been cancelled.  Gerlach claims that "the underwriter that [he] was submitting it to also knew that there was a policy that had been cancelled."  Gerlach Deposition, May 23, 2006, 15:7-14, Great Divide's BOE.

Triad, on behalf of Great Divide, issued the policy subject to favorable inspection.  Triad hired Insurances Services to conduct a loss control inspection in

February 2003. The inspection report, dated February 7, 2003 did not contain any recommendations regarding the pool gate (although the report did note that the fire extinguishers in the cabana area did not have tags). Triad contacted Gerlach on March 29, 2003 to confirm that Maluna Kai had complied with the recommendations set forth in the February 7, 2003 inspection report.

   Maluna Kai sought annual renewal of the policy in November 2003 and November 2004, each time submitting the same application to Triad which contained the original incorrect entries by Gerlach. In other words, the 2003 and 2004 applications stated (incorrectly) that Maluna Kai had not had a policy cancelled within the last three years. Great Divide renewed the Maluna Kai policy effective November 23, 2004, subject to compliance with the inspection recommendations dated March 29, 2003. Gerlach notified Triad that Maluna Kai had complied with the loss control recommendations that the fire extinguishers be checked and tagged. Great Divide, through Triad, notified Gerlach that coverage for Maluna Kai was bound, effective November 23, 2004.

C. <u>The Swimming Pool Coverage Exclusion</u>

   The annual policies issued by Great Divide each contained a coverage exclusion ("swimming pool exclusion") for "'bodily injury', 'personal and advertising injury', or medical payments arising out of the ownership,

6

maintenance, operation, or use of a swimming pool unless the swimming pool is fenced with a self-locking gate and meets or exceeds all local governing codes and regulations."  Blair Declaration, Ex. 7, Great Divide's BOE.

D.      The Condition of the Pool Gate

The parties agree that neither of the two pool gates is equipped with a locking mechanism that requires a key or access code to open the gates or a padlock securing the gates.  Their agreement ends here.

Kent Knowley, a Maluna Kai resident and president of the homeowners' association in 2004, claims that each of the gates at the pool is equipped with a spring mechanism that will close the gates when opened.  He also contends that each gate has a latch that will secure the gates when closed. Knowley Declaration ¶¶ 5-6, attached to Maluna Kai's Separate Concise Statement of Material Facts in Opposition to Motion for Summary Judgment ("Separate Concise Statement").  Knowley states that the ocean side gate was closing and latching properly and that the gate was closed and latched on the evening of July 13, 2005 (the day before the drowning).  Knowley Declaration ¶19, attached to Maluna Kai's Separate Concise Statement.

Great Divide, on the other hand, claims the ocean side pool gate had no type of locking device and did not close by itself.  There is evidence that the

gate did not continuously function properly in the past few years, and there were times when the latch on the ocean side gate was not properly aligned with the strike pin portion of the strike plate attached to the fence.  The rock wall was missing several rocks just below where the strike plate was held in place, but the strike plate remained affixed to the fence.  Kent Knowley had hired a contractor to repair the rock work on the ocean side gate, but this work had not been completed.  Knowley explained that the association "wanted to get it repaired and then that would make the latch more secure so that it would close easier."  Knowley Deposition, 73:17-19, Great Divide's BOE.

E.     The Drowning Incident

On July 14, 2005, two-year-old Faith Rogers drowned in the Maluna Kai pool.  The victim's estate and her mother, Michelle Rogers, have not filed a formal action against the residents of Maluna Kai or the association.  Great Divide filed the instant declaratory action on September 21, 2005.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (*quoting Celotex*, 477 U.S. at 322).

///

///

///

## IV.  ANALYSIS

A.     <u>Great Divide is not entitled to summary judgment as to its claims that it owes no duty to defend or indemnify based on policy exclusions</u>

### 1.     Hawaii insurance law on the duty to defend and policy exclusions

The court looks to the language of the insurance policy involved to determine the scope of the insurer's duty. *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994). "In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech." *Burlington Ins. Co. v. Oceanic Design & Constr. Inc.*, 383 F.3d 940, 945 (9th Cir. 2004).

Hawaii courts have also held that "because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Tri-S Corp. v. W. World Ins. Co.*, 110 Haw. 473, 489, 135 P.3d 82, 98 (2006) (citations omitted). Furthermore, all doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured. *Allen v. Scottsdale Ins. Co.*, 307 F. Supp. 2d 1170, 1175 (D. Haw. 2004) (citing *Sentinel Ins. Co.,* 76 Haw. at 287, P.2d at 904).

A policy provision is not ambiguous just because the insurer and insured disagree over the interpretation of the terms of a policy. "Ambiguity exists and the rule is followed only when the [policy] taken as a whole, is reasonably

subject to differing interpretation." *Oahu Transit Servs., Inc. v. Northfield Ins. Co.*, 107 Haw. 231, 236 n.7, 112 P.3d 717, 722 n.7 (2005) (quoting *Hawaiian Ins. & Guar. Co., Ltd. v. Chief Clerk of First Cir. Ct.*, 68 Haw. 336, 341, 713 P.2d 427, 431 (1986)).

### 2. The phrase "self-locking gate" is ambiguous

The Great Divide policy excludes coverage for losses "arising out of the ownership, maintenance, operation, or use of a swimming pool unless the swimming pool is fenced with a self-locking gate and meets or exceeds all local governing codes and regulations."[2] The Great Divide policy does not define "self-locking."

The plain meaning of the disputed language does not assist the court in this instance. It is not immediately clear what constitutes a "self-locking gate." While Great Divide argues that for a gate to be "self-locking" it must be equipped with a lock (requiring a key or access code to open), Maluna Kai argues that the word "lock" has multiple meanings depending on the specific context. For instance, as Maluna Kai's counsel pointed out during the August 30 hearing, airplane tray tables are to be "locked" in their upright position during take off and landing. On the other hand, "to lock a door" implies securing the door so that one

---

[2] There is no dispute, for the purposes of the instant motion, that the swimming pool is fenced and meets or exceeds all local governing codes and regulations.

would need a key or combination to open it.  Each of the parties' interpretation of "lock" is consistent with the term's "accepted sense in common speech." *Burlington Ins. Co.*, 383 F.3d at 945.

The parties' definitions of "lock" are also supported by the term's many dictionary definitions.  The Oxford English Dictionary defines the verb "lock," among various other definitions, as:  "To fasten (a door, gate, box, drawer, etc.) with a lock and key"; and "to secure (a chamber, building, enclosure) by locking the doors"; and also "[t]o fix or join firmly by interlacing or fitting of parts into each other."  *Oxford English Dictionary* 1084-85 (2d ed. 1989).  The definition "to fasten . . . with a lock and key" aligns with Great Divide's interpretation, while another definition, to "fix or join firmly by interlacing or fitting of parts into each other," supports Maluna Kai's view.

The contract, taken as a whole, is reasonably subject to different interpretations.  The term "self-locking" is therefore ambiguous.  Because "any ambiguities must be resolved against the insurer," *Tri-S Corp.*, 110 Haw. at 489, 135 P.3d at 98 (citations omitted), the court cannot declare that Great Divide has no duty to defend or indemnify Maluna Kai.

The ambiguous term "self-locking" precludes application of the coverage exclusion.  There is conflicting evidence in the record regarding the

12

condition of the ocean side gate.  Maluna Kai has offered evidence that the gate closed and latched properly,[3] while Great Divide has offered evidence to the contrary.

The court finds that there is a genuine issue of material fact as to whether the pool gates (and in particular the ocean side pool gate) were "self-locking."  Summary judgment, therefore, is not appropriate.  The court DENIES Great Divide's Motion for Summary Judgment as to Great Divide's claim that it owes no duty to defend or indemnify based on the swimming pool coverage exclusion.

B.   Great Divide is not entitled to summary judgment as to its claim for rescission

"A misrepresentation shall not prevent a recovery on the policy unless made with actual intent to deceive or unless it materially affects either the acceptance of the risk or the hazard assumed by the insurer."  Hawaii Revised Statutes ("HRS") § 431:10-209.

Great Divide does not allege that the misrepresentations were made with the actual intent to deceive.  As a result, Great Divide must establish that the

---

[3] For instance, Kent Knowley claims that each of the gates is equipped with a spring mechanism that will close the gates when opened; that each gate has a latch that will secure the gates when closed; that the ocean side gate was closing and latching properly; and that the ocean side gate was closed and latched on the evening of July 13, 2005. Knowley Declaration ¶¶5-6, 19, attached to Maluna Kai's Separate Concise Statement.

insured made misrepresentations which materially affected Great Divide's decision to issue the policy.

Under Hawaii law, forfeiture of an insurance policy is strongly disfavored. *Gasaway v. Northwestern Mut. Life Ins. Co.*, 820 F. Supp. 1241, 1248 (D. Haw. 1993). "Forfeiture of insurance coverage is so disfavored that the courts are always prompt to seize hold of any circumstance to uphold the validity of a policy." *AVEMCO Ins. Co. v. Chung,* 388 F. Supp. 142, 147 (D. Haw. 1975) (citation and internal quotation signals omitted); *see also Barber v. Chatham*, 939 F. Supp. 782 (D. Haw. 1996) (same). "In Hawaii, the forfeiture of an insurance policy is disfavored unless it is shown that the insured seriously breached a duty owed to the insurer, as by defrauding the latter." *Sovereign Life Ins. Co. of Cal. v. Rewald*, 601 F. Supp. 1489, 1492 (D. Haw. 1985) (citing *Colburn v. U.S. Fid. & Guar. Co.*, 25 Haw. 536, 543 (1920)).

### 1. Triad's knowledge of the Scottsdale policy cancellation is imputed to Great Divide

Maluna Kai argues that Great Divide had knowledge of the prior cancellation of the Scottsdale policy: because Triad served as both Scottsdale's and Great Divide's agent in Hawaii, Maluna contends, Triad's knowledge of the cancellation should be imputed to Great Divide.

Generally, "notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal[.]" Restatement (Third) of Agency § 5.03 (2006). *See also Imperial Fin. Corp. v. Fin. Factors, Ltd.*, 53 Haw. 203, 205, 490 P.2d 662, 664 (1971) (when an agent has knowledge which he has a duty to disclose to his principal, that knowledge is imputed to the principal).[4]

The Hawaii Supreme Court has relied on the Restatement (Second) of Agency § 381 to formulate the general duty of agents toward their principals:

> Unless otherwise agreed, an agent is subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person.

---

[4] In this case, Triad's knowledge of the Scottsdale cancellation certainly appears to be material to Triad's duties to Great Divide. Great Divide has not argued that Triad did not owe it a duty to disclose material information, and there is no evidence before the court indicating any limitation on Triad's duties to Great Divide.

*Imperial Fin. Corp.*, 53 Haw. at 205, 490 P.2d at 664.[5]  Absent any contrary evidence, Triad is subject to this general duty to disclose.  Great Divide submits that it is impracticable for Triad to cross-reference all of its transactions across clients in order to catch such misrepresentations.  Impracticability, however, will not surmount the general rule that notice to an agent is imputed to the principal.  Great Divide has not rebutted the presumption of the legal fiction that notice to the agent is imputed to the principal.

If an agent has actual knowledge of a fact, the principal is charged with the legal consequences of having actual knowledge of the fact.  Restatement (Third) of Agency § 5.03, cmt. b. (2006).[6]  Triad, as Great Divide's agent, had

---

[5] The Restatement (Third) of Agency § 8.11, issued after *Imperial Fin. Corp.* was decided, is substantially similar to the Restatement (Second) of Agency § 381, and the court would reach the same result applying either version.  Restatement (Third) of Agency § 8.11 provides:
> An agent has a duty to use reasonable effort to provide the principal with facts that the agent knows, has reason to know, or should know when
>   (1) subject to any manifestation by the principal, the agent knows or has reason to know that the principal would wish to have the facts or the facts are material to the agent's duties to the principal; and
>   (2) the facts can be provided to the principal without violating a superior duty owed by the agent to another person.

[6] The minority view in the insurance context, which has not been adopted in Hawaii, is that "knowledge acquired by an agent . . . prior to the negotiations relating to the particular contract of insurance on which suit is brought is not to be deemed imputed to the principal."  3 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* 3d, § 49:17 (2006) (footnote omitted); *see also R.B.Z. v. Warwick Dev. Co*, 725 So. 2d 261, 264 (Ala. 1998) (knowledge gained by agent outside scope of agency and prior to it not imputed to principal).

The Restatement rejects this rule, however.  "The better rule is the broader rule that
(continued...)

actual notice of the cancellation of the Scottsdale policy and the circumstances surrounding the cancellation. "Thus, under the rule of imputation the principal is chargeable with the knowledge the agent has acquired, whether the agent communicates it or not." *Martin Marietta Corp. v. Gould, Inc.*, 70 F.3d 768, 773 (4th Cir. 1995) (footnote omitted).

Although there are exceptions to this general rule, none is applicable here. For instance, in Hawaii, the general rule imputing the agent's knowledge to the principal "does not apply when the third party knows there is no foundation for the ordinary presumption,—when he is acquainted with circumstances plainly indicating that the agent will not advise his principal. The rule is intended to protect those who exercise good faith, and not as a shield for unfair dealings." *Imperial Fin. Corp.*, 53 Haw. at 206, 490 P.2d at 664. Great Divide argues that Maluna Kai had to be aware that Triad may not have disclosed the prior cancellation to Great Divide. There is simply no evidence presented to support this claim. On the contrary, Maluna Kai has presented deposition testimony that Triad's employees were aware of the cancellation at the time Maluna Kai

---

[6](...continued)
charges a principal with the totality of an agent's knowledge of material facts and disregards the provenance of how the agent learned them." Restatement (Third) of Agency § 5.03, cmt. e. (2006). The court finds that the Hawaii Supreme Court would apply the majority rule as articulated in the Restatement (Third) of Agency.

17

submitted its application for Great Divide insurance.  *See* Gerlach Deposition, May 23, 2006, 15:9-14, Great Divide's BOE.  Great Divide has offered no evidence to show that Maluna Kai "was acquainted with circumstances plainly indicating that [Triad] might not advise [Great Divide]" of the misrepresentations.  *Reassure Am. Life Ins. Co. v. Rogers*, 248 F. Supp. 2d 974, 983 (D. Haw. 2003).

Another exception to the general rule of imputation is where the agent acts in a manner adverse to the principal.  The adverse interest exception "recognizes that when the interests of the agent and the principal are adverse, the agent's knowledge cannot be imputed to his principal."  *Martin Marietta Corp.,* 70 F.3d at 773.  To come within this exception, "the agent must have totally abandoned the principal's interest and be acting for his own purposes or those of another.  In other words, the interests of the agent must be completely adverse to those of his principal."  *Id.*  (citation omitted).  Here, the adverse interest exception is not implicated.  There is no evidence before the court of adverse interest or abandonment.  The court finds that Triad's actual knowledge of the Scottsdale policy cancellation and the surrounding circumstances are properly imputed to Great Divide.

### 2. Great Divide issued the policies to Maluna Kai notwithstanding the misrepresentations in the applications

"Before [an insurer] is entitled to rescind the policy . . . it must establish that the misrepresentations were material—i.e., that the information would have materially affected either the acceptance of the risk or the hazard assumed. In other words, if the misrepresentations relate to [the insurer's] decision to insure the risk, or if disclosure would have influenced the rate of premiums, then they are material." *Gasaway v. Northwestern Mut. Life Ins. Co.*, 820 F. Supp. 1241, 1246 (D. Haw. 1993).

In *Park v. Government Employees Insurance Co.*, 89 Haw. 394, 399, 974 P.2d 34, 39 (1999), the Hawaii Supreme Court adopted the general rule regarding materiality: "This formulation states that '[g]enerally, a misrepresentation is material, either when the insurer would not, as a careful and intelligent man, have issued the policy had the truth been known, or would have issued it only at a higher rate of premium.'" (Quoting 7 George J. Couch, *Couch on Insurance* 2d (rev. ed.) § 35:45 (1985).) (Alteration in original.) This general formulation is not applicable where, as here, the truth of the misrepresentations is known to the insurer.

The legal fiction, which imputes Triad's knowledge of the misrepresentations to Great Divide, precludes Great Divide from establishing that it would not have issued a policy to Maluna Kai had it known the truth. Great

19

Divide issued the policy with knowledge of the misrepresentations, such that the misrepresentations are not "material" for the purposes of HRS § 431:10-209.

Accordingly, the court DENIES Great Divide's Motion for Summary Judgment to rescind the policy.

## V.  CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's Motion for Summary Judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 27, 2006.

/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Great Divide Insurance Company v. AOAO Maluna Kai Estates*, Civ. No. 05-00608 JMS/LEK, Order Denying Plaintiff's Motion for Summary Judgment